CLARKE v. NORTH et al.

(Supreme Court, Appellate Division, Third Department. May 8, 1912.)

PARTNERSHIP (§ 52*)—EXISTENCE—EVIDENCE—SUFFICIENCY.

In an action to establish the existence of a partnership and for an accounting, evidence *held* to show the partnership.

[Ed. Note.—For other cases, see Partnership, Cent. Dig. §§ 75, 79; Dec. Dig. § 52.*]

Appeal from Special Term, Albany County.

Action by Willard E. Clarke against Harry B. North and another. From a judgment for defendants, plaintiff appeals both on the law and facts. Reversed and remanded.

Argued before SMITH, P. J., and KELLOGG, HOUGHTON, BETTS, and LYON, JJ.

Duncan Douglas, of Albany (T. F. Woods, of Albany, of counsel), for appellant.

MacLean & Neary, of Cohoes, for respondent Harry B. North.

Patrick C. Dugan, of Albany, for respondent Charles F. North.

LYON, J. We have reached the conclusion that the judgment appealed from must be reversed as being against the weight of evidence. The action was brought to establish the existence of an alleged partnership between the plaintiff and the defendant Harry B. North during approximately the six years from December, 1902, to December, 1908, and for an accounting of the partnership affairs. The business was manufacturing and selling paper boxes, and was conducted under the name of the "Enterprise Paper Box Factory," at Cohoes, N. Y. The defense was that no such partnership ever existed, but that the business belonged solely to the defendant Charles F. North, and that the plaintiff and the defendant Harry B. North were simply employés for no definite time, the former in charge of the manufacturing department and the latter as bookkeeper and business manager, each at the wages of $20 per week. Charles F. North was the father of Harry B. North, and the latter resided with his father during the six-year period above mentioned. The alleged partnership agreement, as well as all negotiations leading to the establishing of the business, were verbal, and upon the trial the testimony of the plaintiff and of the defendants was flatly contradictory. The record, however, discloses certain uncontroverted facts, many of which are established by written evidence, relative to the action of the parties and the conduct of the business, which seem to us to have clearly proven the existence of the partnership, to the most material of which we will call attention.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In the month of December, 1902, it was decided after extended consultation between the parties to this action, extending over several months, to engage in the paper box making business, and to occupy rooms which had been used for that purpose in a building belonging to the defendant Charles F. North, but which were to be vacated January 1st. The machinery needed in carrying on the business was then purchased through an agent of the manufacturers for the sum of $2,964.26, the defendant Charles F. North giving his check therefor. This sum, however, was repaid to him by three checks of the "Enterprise Paper Box Factory, per H. B. North," payable to the order of C. F. North as follows: December 15, 1905, $1,000; October 30, 1906, $1,000; January 17, 1907, $964.25. Upon the stub of the latter check appeared in the handwriting of H. B. North: "Bal. of machinery a/c of Hobbs Mfg. Co. Dec. 23, 1902, $964.26." In the month of December, 1902, before starting in business, a letter head was prepared by H. B. North, which was submitted to and approved by the plaintiff and by the defendant Charles F. North, in the upper left-hand corner of which was the name "H. B. North," and in the upper right-hand corner the name "W. E. Clarke," and between these names and above the center of the sheet the words, "The Enterprise Paper Box Factory, 49 to 57 Mohawk Street, Cohoes, N. Y." This letter head only was used during the whole six years business career of the company. During the months of December, 1902, and January and February, 1903, the defendant Charles F. North paid for a horse, card board, freight, pay roll, and expenses for the Enterprise Paper Box Factory the sum of $1,145.17, an itemized bill for which, reading "Enterprise Paper Box Factory to Charles F. North, Dr.," had been presented to and for several years prior to the commencement of this action was in the pigeon hole of bills to be paid by the Enterprise Paper Box Factory. There was no proof offered of payment of this bill, and it appeared that the box factory had from time to time furnished boxes to the Anchor Knitting Mills, which were owned and operated by the defendant Charles F. North, and that the account between them was never settled. February 7, 1903, in order to obtain working capital with which to carry on the business, a note was made as follows:

"Four months after date we promise to pay to the order of ourselves five thousand and 00/100 dollars at Manufacturers Bank, Cohoes, N. Y. Value received.          Enterprise Paper Box Factory, per H. B. North."

This note was indorsed: "Enterprise Paper Box Factory. H. B. North. W. E. Clarke. Charles F. North"—and was discounted, and the proceeds placed to the credit of the Enterprise Paper Box Factory. This note was renewed from time to time, and in June, 1906, $3,000 had been paid thereon by the Enterprise Paper Box Factory, and later the balance was paid by that concern.

In 1903 an accident occurred in the box factory and a liability policy was taken out by H. B. North in the Ætna Life Insurance Company, which recited that such company "does hereby agree to indemnify North & Clarke. * * * (1) Name of assured, North & Clarke. * * * (3) The assured is copartnership. * * * The

estimated pay roll covers the wages of all persons * * * except as follows, partners." Later a second liability policy was taken out in the same company containing the same statements.

On January 8, 1904, the Enterprise Paper Box Factory, with the knowledge and approval of Charles F. North, purchased of Thomas Breslin the business and property of the "Waterford Box Company," and took a bill of sale thereof which named the parties of the second part as "North & Clarke, a firm doing business under the style and firm of the Enterprise Paper Box Factory of the city of Cohoes," and stated that "the said North & Clarke are to deliver to me at the delivery of this bill of sale their promissory note for said sum of $2,-488.97, which note is to be indorsed by Charles F. North," and to be paid monthly in installments of $200 each. A note of date January 8, 1904, for $2,488.97 was given payable to the order of Thomas Breslin in monthly installments of $200 each, signed "Enterprise Paper Box Factory. H. B. North. W. E. Clarke," and indorsed as follows:

"For value received I hereby guarantee the payment of the above note. Charles F. North. Dated Cohoes, N. Y., January 8, 1904."

This note was duly paid by the checks of the Enterprise Paper Box Factory out of the proceeds of its business. The attorney, Charles C. Ormsby, who prepared the agreement, testified that the defendant Harry B. North stated to him that the Enterprise Paper Box Factory was not an incorporated company, but that it was a firm called North & Clarke. On August 2, 1905, the defendant Harry B. North rendered to the Ætna Life Insurance Company a statement of wages expended under one of its policies, which notice was signed "North & Clarke, per H. B. North," above the words, "This statement must be signed by the assured." In the months of May and June, 1906, the defendant Harry B. North made to the Ætna Life Insurance Company two reports of accidents to employés of the Enterprise Paper Box Factory, each of which was signed, "H. B. North, Prop." There were also offered in evidence 48 bills made out to and paid by North & Clarke in the regular business of the Enterprise Paper Box Factory, also several checks payable to their order received in the regular business of the box factory in the year 1908, which were indorsed: "Enterprise Paper Box Factory, North & Clarke per H. B. North." Harry B. North testified that he told none of the makers of the bills of their mistake. There were also offered in evidence checks of the Enterprise Paper Box Factory given in repayment of loans payable to the order of Charles F. North, aggregating $2,200.

Practically the only writings offered by defendants bearing upon the question of the alleged partnership were three fire insurance policies which were taken out by the defendant Charles F. North early in February, 1903, payable to the Enterprise Paper Box Factory, but he testifies that he does not know who paid the premiums. It appears from the evidence that the defendant Charles F. North gave very little attention to the business of the box factory, and was very seldom in its place of business. In fact, the son testifies that during the six years "I saw him in the Enterprise Factory a half dozen

times." Charles F. North testifies that he never signed a check, never examined the books, and knew nothing about them. The plaintiff and defendant Harry B. North each had keys to the desks in the office, each knew the combination of the safe, and each had full access to all the books and papers of the factory. The business of the Enterprise Paper Box Factory was profitable. While the record does not disclose the precise profit, yet it appears to have averaged about $4,000 per year.

From the foregoing general statement of uncontroverted facts, it would seem that but one conclusion can be drawn, and that to the effect that the copartnership existed as claimed by the plaintiff. It would, indeed, seem incredible that the plaintiff, if a mere employé from week to week, should willingly obligate himself upon a $5,000 note given to provide funds for starting the business, and also willingly obligate himself upon the many renewals thereof, and should later become one of the makers of a $2,400 note given to purchase the business of the Waterford Box Company, and should also through letter headings and by the general conduct of the business allow himself to be held out to persons dealing with the box factory as a partner, and thereby liable for all the debts of the factory, when, in fact, he had no financial interest whatever in the business, and was merely an employé liable to be discharged at the end of any week. It is equally incredible, if the plaintiff had been a mere employé, that a successful business man, as the record shows Charles F. North to have been, would have allowed the business to be so conducted during the whole six years without any protest whatever or without requiring some written evidence of his ownership. Practically all the conceded facts are at variance with defendant's contention that the plaintiff was a mere employé on a weekly salary. A careful study of the record leads irresistibly to the conclusion that the copartnership existed as claimed by plaintiff. The judgment must therefore be reversed on the law and the facts, and a new trial granted, with costs to appellant to abide the event.

Judgment reversed on law and facts and new trial granted, with costs to appellant to abide event. All concur.